**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEANNINE KEENAN,** | |
| *Plaintiff*, | **Civil Action** |
| *v.* | **No. 23-cv-2754** |
| **NAZARETH HOSPITAL,** | |
| *Defendant.* | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                                                    **August 5, 2025**

Plaintiff Jeannine Keenan brings religious and disability discrimination and retaliation claims against Defendant Nazareth Hospital.  Defendant moves to dismiss the Amended Complaint.  For the following reasons, I will grant the Motion in part and deny it in part.

## I.    <u>FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY</u>

The following facts are set forth in the Amended Complaint.[1]

As alleged, Plaintiff worked for Defendant as an ICU nurse until her termination on August 8, 2022.  On July 8, 2021, Defendant established COVID-19 safety measures which required employees to be vaccinated by September 21, 2021.  On August 18, 2021, Plaintiff requested a medical exemption to the vaccine, citing an anaphylactic reaction to a flu vaccine administered in

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

1993.  Plaintiff stated she would get allergy testing in October 2021 to determine if she could safely get the COVID vaccine.

In October 2021, Plaintiff met with her primary care physician because she was experiencing severe depression "due to an intense fear of dying from the vaccine." (Am. Compl. ¶ 14, ECF No. 20.)  From October 2021 to April 2022, Plaintiff received therapy and was diagnosed with major depressive disorder.  She notified her nursing supervisors of her mental health conditions, medical appointments, therapy, and diagnosis.  Plaintiff alleges that her depression and anxiety substantially limit her ability to think, concentrate, sleep, breath, eat, and enjoy hobbies.

On November 23, 2021, Plaintiff's immunologist informed her that she was not allergic to polysorbate[2] and thus could receive "any vaccine."  (Id. ¶ 20.)  On February 10, 2022, Defendant requested an update regarding Plaintiff's allergy test results.  On March 2, 2022, after Plaintiff failed to respond, Defendant denied the medical exemption.

On March 18, 2022, Plaintiff requested a religious exemption based on her Catholic Christian faith. Plaintiff wrote in relevant part:

> The teachings that I have lived by my entire life have led me in believing that vaccination is not morally obligatory in principle and instead, something of voluntary acceptance. I believe that my informed judgements about the proportionality of medical interventions are to be respected as long as they do not contradict authoritative religious teachings. I feel as though I am morally required to obey my conscience, even if it errs. I leave my beliefs in my health and wellbeing in the hands of my Lord. If I were to receive this vaccine, I would be abandoning my strong held beliefs in my God and all that I have been taught in His name.

[2] Plaintiff alleges that her immunologist tested her for an allergy to a preservative used in vaccines, polysorbate. Plaintiff further alleges that she learned that polysorbate is only used in the J&J COVID-19 vaccine. She alleges that the Moderna and Pfizer vaccines use another preservative, polyethylene glycol, for which she was not tested. Finally, Plaintiff alleges that she fears that polyethylene glycol is used as a preservative in all three COVID-19 vaccines.

(<u>Id.</u> ¶ 35.)

Five days later, Defendant requested additional information regarding Plaintiff's religious beliefs, how they conflicted with the vaccine requirement, and Plaintiff's recommendation for resolution.  Plaintiff responded to Defendant's request on March 29, 2022:

> As for the characteristics or attributes of the vaccine that violate my religious beliefs or practices ...... ! [sic] I can honestly tell you that in my two years of absolute grueling hell that I've endured, there is no division between vaccinated vs. non vaccinated. The ultimate, final decision comes from above and lays in the hands of God.
>
> At this point and time, I can't suggest any resolution to this conflict because I can't stop the death and despair and there is no evidence to support any positive results in the infant stages of trials and tribulations with this vaccine. I can only leave the final decisions and outcomes in the hands of my Savior. As for my personal thoughts and experiences related to therapeutic proportionality, well, this involves my own informed conscience as a Christian and follower of Christ. It resides on the idea that the benefits of this vaccine outweigh the undesirable effects of it. My first hand experience has caused me to question the legitimacy of this. I have been taught throughout my lifetime and my medical career to faithfully follow what I believe to be just.
>
> The benefit of this vaccine is yet to be proven as I have witnessed many more undesirable effects, including death, no matter whether one was vaccinated or not vaccinated. God does not discriminate. The covid vaccine is a disproportionate medical intervention which causes great personal anguish within my own religious beliefs and according to the Church, is not morally obligatory.  The Catholic Church teaches that we have stewardship over our lives and have a duty to care for our own health. I would ultimately be the recipient of an intervention that has not been proven to be therapeutic and, therefore, I must obey the judgment of my own informed conscience as a Christian and follower of Christ. In doing so, I follow my leader.

(<u>Id.</u> ¶ 37.)

In the operative Complaint, Plaintiff now alleges that her religious objection is grounded in the "connection between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing or other inputs." (Id. ¶ 71.)

On April 21, 2022, Defendant denied Plaintiff's religious exemption.  On June 20, 2022, Defendant informed Plaintiff that she was not in compliance with the COVID-19 vaccine requirement and had until July 31, 2022 to get vaccinated.  On August 8, 2022, after Plaintiff failed to comply, she was terminated.

On July 19, 2023, Plaintiff initiated this matter.  On May 20, 2024, I dismissed Plaintiff's original Complaint with leave to amend.  Plaintiff amended on June 10, 2024. Defendant now moves to dismiss the Amended Complaint.

## II.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  <u>Bistrian v. Levi</u>, 696 F.3d 352 (3d Cir. 2012).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  <u>Id.</u> at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  <u>Id.</u>  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

## III.    DISCUSSION

### A.    Religious Discrimination and Failure to Accommodate

In dismissing her initial religious discrimination claims, I explained that Plaintiff's allegations—taken from her religious exemption request—were insufficient to raise an inference that she had a belief "conflicting with vaccination that satisfie[d]" the applicable standard.  (<u>See</u> Order ¶ 18, ECF No. 20.)  Plaintiff attempts to cure this deficiency by alleging a new religious objection based on the use of aborted fetal cell lines in the production of COVID-19 vaccines. Defendant argues that Plaintiff fails to allege that she communicated this newly alleged religious belief to Defendant.

Title VII prohibits religious discrimination in employment.  42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of religious discrimination under Title VII and the PHRA,[3] a plaintiff must show: (1) "she holds a sincere religious belief that conflicts with a job requirement";

---

[3] If Plaintiff states a claim under Title VII, Plaintiff also states a claim under the PHRA. <u>Bullock v. Children's Hosp. of Phila.</u>, 71 F. Supp. 2d 482, 485 (E.D. Pa. 1999) ("Courts have uniformly interpreted the PHRA consistent with Title VII.").

(2) "she informed her employer of the conflict; and" (3) "she was disciplined for failing to comply with the conflicting requirement." Shelton v. Univ. of Med. and Dentistry of N.J., 223 F.3d 220, 224 (3d Cir. 2000).

An employee "must give the employer fair warning that a particular employment practice will interfere with that employee's religious beliefs." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 319 (3d Cir. 2008) (internal quotations and citations omitted). An employee must "inform[] the employer of a *particularized* religious belief in conflict with an employment requirement." Id. (emphasis added). An employee who only alleges that she informed the employer of her religion does not "sufficiently satisfy [her] duty to provide 'fair warning' to [the employer] that she possessed a religious belief that specifically prevented her from" complying the employment requirement. Id. Plaintiff was therefore obligated to inform "Defendant of [her purported religious beliefs] at the time Plaintiff sought the accommodation." Blackwell v. Lehigh Valley Health Network, No. 22-3360, 2023 WL 5807840, at *6 (E.D. Pa. Sept. 7, 2023).

Further, although the ADA imposes a duty to engage in the interactive process, "a similar duty has not yet been imposed for Title VII religious accommodation claims." Ritter v. Lehigh Valley Health Network, No. 22-4897, 2024 WL 643543, at *7 (E.D. Pa. Feb. 15, 2024) (quoting Mullen v. AstraZeneca Pharms., LP, No. 23-3903, 2023 WL 8651411, at *5 n.2 (E.D. Pa. Dec. 14, 2023)). "[E]ven if such a requirement did exist," a defendant is not required to help a plaintiff "craft a satisfactory religious objection." Id.

Here, Plaintiff alleges that her "sincerely held religious beliefs, deeply rooted in the [] Scriptures, preclude her from accepting any one of the then available Covid-19 vaccines derived from, produced, or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines." (Am. Compl. ¶ 79.) Plaintiff fails to allege, however, that she informed Defendant

of these "sincerely held religious beliefs."  Instead, Plaintiff alleges only that she provided Defendant with the same general statements I previously held were insufficient to satisfy the applicable standards.  (See id. ¶¶ 35, 37 (stating that "there is no evidence to support any positive results in the infant stages of trials and tribulations with this vaccine"; "the benefits of this vaccine outweigh the undesirable effects of it"; and "[t]he covid vaccine is a disproportionate medical intervention which causes great personal anguish within [her] own religious beliefs and according to the Church, is not morally obligatory").)  Because Plaintiff fails to allege that she informed Defendant of her religious objection to the use of aborted fetal cell lines, "these beliefs cannot form the basis for her religious discrimination claim."  Blackwell, 2023 WL 5807840, at *9.

I will dismiss Plaintiff's religious discrimination and accommodation claims with prejudice because amendment would be futile.  Despite the opportunity to amend, Plaintiff has again failed to remedy the deficiencies that warranted the dismissal of her original religious discrimination claim.  This failure, and the inclusion of what appears to be merely a post-hoc rationalization of her religious objections, cannot save this claim.  See Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (stating that amendment should be allowed "unless denial can be grounded in a repeated failure to cure deficiency by amendments or futility of amendment" (quoting Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196 (3d Cir.1994))).

### B.    Disability Discrimination

Defendant urges that Plaintiff has failed to allege that: (1) her anaphylaxis qualifies as a disability under the ADA; and (2) she communicated her alleged anxiety and depression to Defendant.

To state a claim under the ADA and PHRA,[4] a plaintiff must allege that she: (1) is disabled within the meaning of the ADA; (2) can perform the essential functions of her job with or without reasonable accommodations; and (3) has suffered an adverse employment action as a result of discrimination based on her disability. Keyes v. Catholic Charities of the Archdioceses of Phila., 415 F. App'x 405, 408–09 (3d Cir. 2011).

"Discrimination under the ADA . . . includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v. Phoenixville School District, 184 F.3d 296, 306 (3d Cir. 1999). To state a failure-to-accommodate claim, a plaintiff must show that: "(1) she is disabled, (2) she is qualified, and (3) her employer (i) refused to provide her with a proposed reasonable accommodation, or (ii) failed to engage in an interactive process after she requested an accommodation, though a reasonable accommodation was possible." Solomon v. School Dist. of Phila., 882 F. Supp. 2d 766, 799 (3d Cir. 2012).

To demonstrate that an employer failed to engage in the interactive process, a plaintiff must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Taylor, 184 F.3d at 319–20.

### 1.    Disability

Defendant challenges only whether Plaintiff's anaphylaxis is a disability under the ADA.[5]

---

[4] If Plaintiff states a claim under the ADA, Plaintiff also states a claim under the PHRA. See Oden v. Septa, 671 F. App'x 859, 862 n.4 (3d Cir. 2016) ("We apply the same liability standards to [plaintiff]'s ADA and PHRA claims because the two statutes are 'to be interpreted consistently' and 'have the same standard for determination of liability.'" (quoting Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012))).

[5] After a review of the allegations, I find that Plaintiff has adequately alleged that her depression and anxiety qualify as disabilities under the ADA.

The ADA defines a "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)–(C).  "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'"  Arrington v. Nat'l R.R. Passenger Corp., 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

"In determining whether a plaintiff's impairment substantially limits a major life activity, the Supreme Court has stressed that courts should 'determine the existence of disabilities on a case-by-case basis.'"  Taylor, 184 F.3d at 306 (quoting Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999)).  "A nonpermanent or temporary condition cannot be a substantial impairment under the ADA."  Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (citing Williams v. Phila. Hous. Auth., 380 F.3d 751, 765 (3d Cir. 2004)).

Plaintiff fails to allege that her prior instance of anaphylaxis is a permanent or ongoing condition that substantially limits any major life activity.  Plaintiff alleges only a single episode of anaphylaxis relating to a flu vaccine she received in 1993.  (Am. Compl. ¶ 24.)  She has failed to allege how this singular episode is anything more than a temporary condition.  Moreover, Plaintiff's immunologist informed her that she was not allergic to the COVID-19 vaccine and receiving the vaccine would not cause anaphylaxis.  (Id. ¶ 20.)

In these circumstances, Plaintiff has not alleged facts to support the assertion that her prior instance of anaphylaxis qualifies as a disability under the ADA.

### 2.    Notice

Defendant also urges that Plaintiff has failed to make out the notice requirement. Defendant first argues that Plaintiff only alleges in a conclusory manner "that she notified Defendant of her anxiety and depression." (Def.'s Mem. Supp. Mot. Dismiss, at 10, ECF. No. 24.) Next, Defendant argues that Plaintiff fails to allege "that she requested any sort of assistance for [depression and anxiety] related to the COVID-19 vaccine." (Id. at 11.) Finally, Defendant contends that Plaintiff fails to sufficiently connect her alleged mental health conditions to an accommodation request for purposes of notice. (Id.) Defendant explains that although Plaintiff made formal exemption requests for anaphylaxis and religion, she failed to do so for her depression and anxiety.

"[T]he employer must know of both the disability and the employee's desire for accommodations *for that disability*." Taylor, 184 F.3d at 313 (emphasis added). An individual is *not* required to request a specific and/or reasonable accommodation to trigger the interactive process. Id. at 315–16. Further, "notice does not have to be in writing, be made by the employee, or formally invoke the magic words, 'reasonable accommodation'" or ADA. Id. at 313. But "notice nonetheless must make clear that the employee wants assistance *for his or her disability*." Id. (emphasis added).

Even if a plaintiff does not directly notify her supervisors of her disability, "there are times when constructive notice can be imputed to an employer." Conneen v. MBNA America Bank, N.A., 182 F. Supp. 2d 370, 377 (D. Del. 2002). In determining whether notice is satisfied, courts consider "whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation" for that disability. Taylor, 184 F.3d at 313.

Plaintiff alleges that she: (1) had a doctor's appointment for "severe depression she was experiencing due to an intense fear of dying from the vaccine"; (2) attended therapy for a period of around six months; and (3) was diagnosed with major depressive disorder. (Am. Compl. ¶¶ 14–16.) Plaintiff further alleges that "[D]efendant was notified of these [facts] and . . . informed her supervisors of the same." (Id. ¶ 17.) Finally, Plaintiff alleges that she "raised issues with her nurse managers regarding depression and anxiety she was experiencing about the virus and vaccines *with respect to her accommodation request*." (Id. Ex. B (emphasis added).)

Based on paragraphs 14–17 and Exhibit B[6] of Plaintiff's Amended Complaint and taking the facts alleged in the light most favorable to Plaintiff, it is plausible that Defendant knew that:

–   Plaintiff was disabled within the meaning of the ADA based on her depression and anxiety because she informed her supervisors at work of her medical treatment, therapy, and diagnosis of major depressive disorder; and

–   Plaintiff sought assistance *for her depression and anxiety* because Plaintiff informed her supervisors that she had severe depression *due to fear of the vaccine*, and Defendant knew that Plaintiff wanted a vaccine exemption.

Taken together, these facts plausibly suggest that Plaintiff provided Defendant "with enough information that, under the circumstances, [Defendant] c[ould] be fairly said to know of both the disability and desire for an accommodation" and therefore satisfies notice. Taylor, 184 F.3d at 313.

Accordingly, I find that Plaintiff has adequately alleged the notice requirement.

### 3.    Interactive Process

Defendant argues that Plaintiff fails to plead facts to suggest that she engaged in the interactive process with respect to her depression and anxiety. (Def.'s Mem. Supp. Mot. Dismiss, at 10 n.4.) At the pleadings stage, however, Plaintiff need not demonstrate her own participation

---

[6] In deciding a motion to dismiss, I may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

in the interactive process. Rather, she must allege her employer's failure to engage in the interactive process. Specifically, Plaintiff must allege facts to plausibly suggest:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Taylor, 184 F.3d at 319–20.

"'Once the employer knows of the disability and the employee's desire for accommodations,' the burden shifts to the employer to engage in the accommodation process." Campo v. Mid-Atl. Packaging Specialties, Inc., 564 F. Supp. 3d 362, 389 (E.D. Pa. 2021) (quoting Taylor, 184 F.3d at 315)). Employers must make a good faith effort to engage in the interactive process to determine if an employee can be reasonably accommodated. Taylor, 184 F.3d at 317.

Further, an employer may improperly and "prematurely cease[] the interactive process and bar[] [the employee] from the individualized inquiry to which she [i]s entitled under the ADA" when it rejects the employee's accommodation requests without proposing an alternative. See Ruggiero v. Mount Nittany Med. Ctr., 736 F. App'x 35, 40 (3d Cir. 2018) (citing EEOC v. Sears, 417 F.3d 789, 807 (7th Cir. 2005) ("[The employer] was not obligated to provide this accommodation, but it also could not simply reject the request and take no further action.")).

Plaintiff alleges that Defendant: (1) did not make a good faith effort to engage with Plaintiff regarding her exemption requests; (2) hid information from the Plaintiff; (3) "undermined Plaintiff's employment" during the period in which Plaintiff's exemption requests were under review; and (4) failed to legitimately consider all possible accommodations for Plaintiff's mental health concerns. (Am. Compl. ¶ 41, Ex. B.)

This is enough to survive Defendant's Motion. Taking Plaintiff's allegations as true, once Defendant had notice of Plaintiff's depression and anxiety and her desire for assistance with these

conditions, Defendant was obligated to engage in the interactive process.  Moreover, this issue is more appropriately decided at summary judgment.  See Dreibelbis v. County of Berks, 438 F. Supp. 3d 304, 317 (E.D. Pa. 2020) (finding that "there might have been an attempt at an interactive process which has not been referenced in the pleadings" but concluding that the employer's "assertions are appropriately brought forward by way of a motion for summary judgment, or at trial, as part of a factual record that has been developed through discovery.").

I find that Plaintiff has alleged sufficient facts to support the assertion that Defendant failed to engage in the interactive process with respect to Plaintiff's depression and anxiety. Accordingly, Plaintiff has made out her disability discrimination claims as it relates to her depression and anxiety.

## C.    Retaliation

I dismissed Plaintiff's original retaliation claims because Plaintiff failed to allege a causal connection between her protected activity and the adverse employment action.  Plaintiff has once again failed to make out her retaliation claim.

To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).  A plaintiff may establish causation by showing (1) that the adverse action took place soon after the plaintiff engaged in the protected activity, or (2) other facts that give rise to an inference that the employer acted with retaliatory intent when taking adverse action.  See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007).

I previously held that Plaintiff failed to allege causation because "[n]o close temporal relationship exists, as Plaintiff requested accommodations in August 2021 and March 2022, but was not terminated until August 2022." (Order ¶ 41.) The Amended Complaint does not allege additional facts to remedy this deficiency.

Plaintiff has thus failed to allege facts to support the assertion that there was a causal connection between her participation in the protected activity and the adverse employment action. Accordingly, Plaintiff's retaliation claims will be dismissed, with prejudice.

IV. **<u>CONCLUSION</u>**

The Amended Complaint alleges sufficient facts to state a failure-to-accommodate claim under the ADA as it relates to her depression and anxiety disabilities. Accordingly, I will deny Defendant's Motion to Dismiss with respect to Plaintiff's ADA and PHRA disability discrimination claims. For the reasons set out above, I will deny Defendant's Motion to Dismiss with respect to Plaintiff's ADA and PHRA disability discrimination claims and grant Defendant's Motion to Dismiss with respect to all other claims.

An appropriate order follows.